Justice Beth Baker, concurring.
¶ 29 I write to comment on A.M.'s argument that Baby Girl should not ***383 be applied to uphold the termination of his parental rights without requiring ICWA compliance.
¶ 30 A.M. first points out that ICWA defines "parent" to include an unwed father whose paternity has been "acknowledged or established." 25 U.S.C. § 1903(9). Although he is not named on P.T.D.'s birth certificate (Opinion ¶ 24), A.M. contends that he never disputed paternity and that he is a "parent" to whom the ICWA requirements apply. A.M. protests that Baby Girl , "applied robotically," could result in an unmarried Indian parent who did not previously have custody of the child losing ICWA protection even where that parent was making efforts to establish a parental relationship before the State got involved.
¶ 31 I agree with the Court that the record in this case supports a conclusion that A.M. never had the "relationship" with P.T.D. that Baby Girl requires before the provisions of 25 U.S.C. § 1912(d) and (f) will be held to apply. That said, I do not believe that Baby Girl forecloses application of these ICWA standards in every case without consideration of a family's particular circumstances. Baby Girl involved a father who had agreed to relinquish his parental rights before the child was born and "made no meaningful attempts to assume his responsibility of parenthood" during the first months of the child's life and until after he had signed papers "that he was 'not contesting the adoption.' " 570 U.S. at 643-44, 133 S.Ct. at 2558. Justice Breyer, one of the five-member majority, observed in a concurrence that the Opinion did not "now decide whether or how § 1912(d) and (f) apply" under different circumstances, such as "a father with visitation rights[,] ... a father who has paid 'all of his child support obligations[,]' ... a father who was deceived about the existence of the child[,] or a father who was prevented from supporting his child." Baby Girl , 570 U.S. at 667, 133 S.Ct. at 2571 (Breyer, J., concurring).
¶ 32 This case lacks circumstances that distinguish Baby Girl . Although A.M. did acknowledge paternity, he did not show that he had established a parental relationship with his child at any time before or after the Department removed P.T.D. from his mother's care. "Custody" aside, A.M. had no involvement with P.T.D. for the first year of the child's life. P.T.D. was taken from his mother's care when he was just over a year old, by which time A.M. had spent a total of about an hour and a half with the child.
*625 (Opinion, ¶ 24). A.M. knew about the Department's proceedings at least within a few months thereafter, because he appeared at the June 22, 2015 hearing on the State's petition for adjudication of P.T.D. as a youth in need of care. At that time, through counsel, A.M. stipulated to adjudication. For the next ***384 twenty-one months, A.M. did not engage in efforts to establish a relationship with his son. A.M. testified that he has always acknowledged paternity of P.T.D., and that he sent to the State his acknowledgment of paternity to be named on P.T.D.'s birth certificate. A.M. also acknowledged, however, that the Department had a duty to establish who P.T.D.'s father is. As the Court points out, he did not follow through with paternity testing. (Opinion, ¶ 24.) And he did not send the State his acknowledgment of paternity for the birth certificate until the termination petition was filed-two years after the Department took P.T.D. into its custody. A.M. invokes ICWA § 1912(d)'s "active efforts" standard to argue that the Department should have reached out to him at his known residence and gotten the paternity test done in his community, instead of expecting him to find the resources to travel for the test. But Baby Girl counsels that the parental relationship must be in place before the statute is triggered.
¶ 33 There may be risk of giving Baby Girl too broad a reach, but this case does not provide a meaningful factual basis on which to distinguish it. I concur.